## Johnson *vs.* White and others.

Where A. purchased of B. one of several parcels of land which were subject to a mortgage, and subsequently B. became insolvent, and made an assignment of his property, including a part of the land mortgaged, to trustees, in trust for the payment of his debts, the lands assigned being first chargeable with the payment of the mortgage, and being a slender security for the debt, interest and costs, and A.'s parcel being chargeable in case the land assigned should prove insufficient; *Held* that A. was, in legal effect, surety for the land assigned that when sold, upon the foreclosure of the mortgage, it should satisfy the mortgage; and that he had a right to see that the principal fund was not impaired by any waste committed thereon, by the assignees.

*Held also*, that A., was entitled to an injunction to prevent the commission of waste by cutting timber, &c. upon the land; but not to prevent the removal of timber already cut.

IN EQUITY. This was a motion to dissolve an injunction. On the 28th day of March, 1844, John Tifft 2d purchased of William P. Van Rensselaer several parcels of land in Stephentown, in the county of Rensselaer. He received a conveyance of the land and executed a mortgage for nine hundred and fifty dollars, to secure a part of the purchase money. Upon this mortgage there was due, at the time this action was commenced, $650 besides interest. On the 30th of Sept. 1848, Tifft sold to the plaintiff one of the parcels of land so purchased by him, and received the consideration therefor. Subsequently, Tifft became insolvent, and on the 11th day of Sept. 1850, he made an assignment of his property, including a part of the land mortgaged to Van Rensselaer, to the defendants, in trust for the payment of his debts. It was alledged in the complaint, and admitted by the defendants, that the assigned lands were first

chargeable with the payment of the mortgage, and that those lands were a slender security for the debt, interest and costs. This suit was commenced on the 9th of December, 1850. On the 14th of the same month, the premises were sold upon a foreclosure of the mortgage. After applying the proceeds towards the satisfaction of the mortgage, there remained due a balance of more than $200, for which the land purchased by the plaintiff of Tifft was liable.

The principal value of the lot in question consisted in the saw mill and machinery standing thereon, and the timber thereon. The complaint stated that the defendants had already felled a large quantity of trees which were standing upon the lot at the time of the assignment, a part of which they had converted into saw logs, and were sawing into lumber at the mill upon the premises, and the remainder they had been, and were then engaged in burning into coal, and that they threatened to strip the saw mill of its machinery and fixtures, and the land of the trees, timber and wood thereon, and to convert and dispose of the same to their own use, leaving the mortgage unsatisfied.

In pursuance of the prayer of the complaint, an injunction was issued, restraining the defendants from committing or permitting any waste, spoil or destruction, of or upon that part of the mortgaged premises assigned to them, *and* from intermeddling with or disposing of the machinery and fixtures in and belonging to the saw mill thereon, or severed therefrom by them, *and from removing, intermeddling with, or disposing of the trees, wood, and timber severed therefrom by them, or the boards, timber or coal manufactured therefrom by them,* until the further order of the court.

The defendants in their answer admitted that they had felled some trees, but they denied that in doing so they had used the premises in an improper or unusual manner, or in a manner different from what other lands in the same vicinity were used, or that they had cut half as much timber as Tifft was in the habit of cutting in the same length of time. A great number of affidavits were read by each party, the contents of which it is not necessary to notice particularly. They related chiefly to the

amount of timber cut upon the premises by the defendants, and some declarations of the defendants tending to show that they intended to make as much as they could out of the wood and timber upon the premises before they should be sold upon the foreclosure of the mortgage.

*J. Romeyn,* for the plaintiff.

*M. J. Townsend,* for the defendants.

HARRIS, J. I have no doubt of the right of the plaintiff to maintain this action. He had, at the time he brought the suit, such an equitable interest in the premises claimed by the defendants under their assignment as justified him in applying for an injunction to restrain the defendants from committing acts which might result in irreparable injury to him. The defendants were the assignees of an equity of redemption in the land. This land was primarily chargeable with the payment of the mortgage for the purchase money. The plaintiff's land was chargeable in case the land assigned should prove insufficient. The plaintiff, in legal effect, was surety for the defendants' land that, when sold upon the foreclosure, it should satisfy the mortgage. Under these circumstances, he had a right to see that the principal fund was not impaired by any waste committed thereon by the defendants. (*See* 2 *Stor. Eq.* §§ 914, 915, *and cases there cited.*) "The jurisdiction of courts of equity, to interpose by way of injunction, in cases of waste," says Story, "may be referred to the broadest principles of social justice. It is exerted where equitable rights and equitable injuries call for redress, to prevent a malicious, wanton and capricious abuse of their legal rights and authorities by persons, having but temporary and limited interests in the subject matter." (*Id.* § 919.)

So far, therefore, as this injunction stayed the future commission of waste, it was properly granted. But it went farther, and restrained the defendants from disposing of the wood and timber already severed from the land and converted into personal property. The right of the plaintiff to this branch of the injunction

Johnson v. White.

is, certainly, not so clear. The defendants held the legal estate in the premises. They were rightfully in possession. They had the legal right to fell the trees and convert them into lumber or coal as they saw fit. It became inequitable for them to exercise that right, only because it impaired the sufficiency of the plaintiff's indemnity against the liability of his own land for the payment of the mortgage. The defendants may be, and probably are, liable for the waste already committed. But if so, it does not follow that the plaintiff is entitled to the logs and lumber and coal manufactured from the trees cut from the premises by the defendants. Nor would the plaintiff be entitled, as a matter of course, to the value of these materials. The inquiry would be, to what extent has the plaintiff been injured by the acts of the defendants ? in other words, how much has the realty, chargeable with the payment of the mortgage, been depreciated in value by the waste committed by the defendants ? An account is to be taken of the damages sustained by the plaintiff, and those damages, and not the property itself, will be recovered. The object of allowing an injunction to stay waste, as in every other case, is to prevent irreparable injury. But what injury will the plaintiff sustain by permitting the defendants to dispose of the property they have severed from the premises ? I can conceive of none, unless it be, that it will not be on hand to satisfy any judgment which the plaintiff may happen to recover. It will not be pretended that this is a sufficient reason for restraining the defendants from disposing of the property. Certainly not, when it is not pretended that they are unable to respond to any recovery which may be had against them. I will not say that had it been made to appear that the defendants were insolvent, the circumstances of this case are not such as would justify the court in holding the property manufactured from the trees severed from the mortgaged premises liable for the satisfaction of the mortgage. This seems to have been the opinion of Mr. Justice Paige in *Spear* v. *Cutler*, (6 *Barb*. 486.) In that case, an injunction had been granted not only restraining the commission of future waste, but also preventing the removal of timber already cut. It appeared that the plaintiff was the owner of

the land, and that the defendant was insolvent. Under these circumstances it was held that the injury would be irreparable if the defendant should be allowed to remove or dispose of the timber he had cut upon the plaintiff's land.

The question was very fully examined by Chancellor Kent in *Watson* v. *Hunter*, (5 *John. Ch.* 169.) There, an injunction was asked for, to restrain the defendants from cutting timber, *and also from removing that already cut.* In respect to the last branch of the injunction, the chancellor said, " There must be a very special case made out, to authorize me to go so far; and such cases may be supposed. A lease, for instance, may have been fraudulently procured by an insolvent person, for the very purpose of plundering the timber under shelter of it. Perhaps in that and like cases, where the mischief would be irreparable, it might be necessary to interfere in this extraordinary way and prevent the removal of the timber." In that case, the injunction was restricted to the timber standing or growing at the time it was served. So far this injunction was proper. But as the premises were sold under the mortgage a few days after it was issued, and the plaintiff, who became the purchaser, is now in possession, there can be no necessity for continuing even that part of the injunction. The motion is therefore granted, but, under the circumstances, I do not think the plaintiff should be charged with costs.

[RENSSELAER SPECIAL TERM, January 20, 1851. *Harris*, Justice.]