TRUMAN R. COLEMAN FOR THE USE OF ALICE D. SMITH v.
THE STEARNS MANUFACTURING COMPANY.

*Vendor's Lien—Machinery converted into Fixtures and brought
within a Mortgage.*

Where a party out of the state makes an unconditional sale of machinery to a resident, who affixes it to the soil but makes no payment, there is no lien enforceable in behalf of the vendor.

Whether a vendor's lien for machinery sold and attached to the soil would be enforceable as against a prior mortgagee of the premises—*Q*.

Chattels may be converted into realty by the purchaser even though he has not paid for them, if they were sold to him without conditions.

Machinery was set up in a building as follows: A boiler was erected in a brick arch, an engine fastened on timbers let into the ground and resting on a foundation of masonry, and a saw-mill placed over the engine, connected with it by belts and chains and fastened by bolts or screws to the frame work of the building. *Held* that the mode and degree of annexation was enough to convert these chattels into realty.

After a mortgage had been assigned the mortgager bought machinery which he affixed to the soil, and went into partnership with his son, who was to have an equal interest with him. The machinery was not paid for however, and after foreclosure of the premises was decreed, and also after the firm had dissolved, the mortgager acting in the firm name released the firm's interest in the machinery to the vendor whom he licensed to enter and remove it. *Held* that the assignee of the mortgage could insist that the machinery was reduced to realty subject to the mortgage, and unremovable as against his objection.

Appeal from Ingham.    Submitted October 9, 1877.
Decided January 9, 1878.

INJUNCTION to prevent the removal of machinery claimed as fixtures subject to a mortgage. The court below granted the injunction and defendant appealed. The facts are in the opinion.

*Edward Cahill* for complainant and appellee.

*Kilbourne & Clayberg* for defendant and appellant. Whether an article is a fixture or not depends rather on the facts than the law, *Hovey v. Smith,* 1 Barb., 376; *Farrar v. Chauffettee,* 5 Den., 527; *Kinsey v. Bailey,* 9 Hun., 452; *Tifft v. Horton,* 53 N. Y., 377; *Crane v. Brigham,* 3 Stock. Ch., 30. As to what is sufficient annexation, see *Ford v. Cobb,* 20 N. Y., 344; *Godard v. Gould,* 14 Barb., 662. It depends on whether the article can be removed without serious damage to the freehold or substantially destroying its own value (*Fortman v. Goepper,* 14 Ohio St., 564; *Teaff v. Hewitt,* 1 Ohio St., 534; *Smith v. Benson,* 1 Hill, 176; *Cresson v. Stout,* 17 Johns., 116; *Sturgis v. Warren,* 11 Vt., 433; *Titus v. Mabee,* 25 Ill., 257; *Dubois v. Kelly,* 10 Barb., 496) the character of the act by which it is put in its place, the policy of the law connected with its purpose, and the intentions of those concerned in the act (*Meigs' Appeal,* 62 Penn. St., 28; *Crippen v. Morrison,* 13 Mich., 33), its nature, mode of attachment, purpose, and the relation of the party annexing it whose intentions to annex it permanently must affirmatively appear (*Weathersby v. Sleeper,* 42 Miss., 732; *Eaves v. Estes,* 10 Kan., 314; *Vanderpoel v. Van Allen,* 10 Barb. 157; *Walker v. Sherman,* 20 Wend., 636; *Swift v. Thompson,* 9 Conn., 63; *Cope v. Romeyne,* 4 McLean, 384; *Voorhees v. McGinnis,* 48 N. Y., 278; *O'Kane v. Treat,* 25 Ill., 557) and unity of title to the land and the chattel in the same person, *Adams v. Lee,* 31 Mich., 440; *Wells v. Banister,* 4 Mass., 514; *Holmes v. Tremper,* 20 Johns., 30; *Kelly v. Austin,* 46 Ill., 156; *Miller v. Plumb,* 6 Cow., 665; *Doty v. Gorham,* 5 Pick., 489; *Rogers v. Woodbury,* 15 Pick., 158; *Russell v. Richards,* 10 Me., 431. Erections for purposes of trade or manufacture are removable although fixtures, *Lawton v. Lawton,* 3 Atk., 13; *Lawton v. Salmon,* 1 H. Bl., 259; *Penton v. Robart,* 2 East., 88; *Buckland v. Butterfield,* 2 Brod. & Bing., 55; *Van Ness v. Pacard,* 2 Pet., 137; *Mott v. Palmer,* 1 Comst., 564; *Osgood v. Howard,* 6 Greenl., 452; *Hines v. Ament,* 43 Mo., 300;

*Aldrich v. Parsons,* 6 N. H., 556; *Ashmun v. Williams,* 8 Pick., 402; *Harris v. Gillingham,* 6 N. H., 11. A prior mortgagee holds the land as security, and a lienor holds the machinery set up by him upon it, *Shaeffer v. Weed,* 3 Gilm. (8 Ill.), 511; *Raymond v. Ewing,* 26 Ill., 329; *Smith v. Moore,* id., 392. And see *Choteau v. Thompson,* 2 Ohio St., 126; *Topping v. Brown,* 63 Ill., 348.

GRAVES, J. This bill was filed to enjoin the defendant corporation from removing from lots 1 and 2 of block 246 in the city of Lansing an engine, boiler, saw-mill and incident machinery, and the court below decreed for complainant. The main facts are as follows: September 27th, 1873, J. Condit Smith conveyed the premises to Dayton G. Canfield for the consideration of $4,500. Canfield paid $1,000 down and gave back a mortgage on the premises for $3,500, which was duly recorded. September 14, 1874, J. Condit Smith assigned the mortgage to Samuel B. Smith, and two days later Samuel B. Smith assigned it to Coleman in trust for Alice D. Smith. Some time after his purchase, and therefore subsequent to the mortgage, Dayton G. Canfield erected a saw-mill building on the premises, and some time before September 19, 1874, went into partnership with his son Volney R. Canfield, the style of the firm being "D. G. Canfield & Co." And at the date last mentioned the defendant, a Pennsylvania corporation doing business at Erie, sold to this firm the engine and other property in question. The price was $3,175 and the sale absolute. Nothing was paid down or agreed to be so paid. Neither was any security asked or given upon the articles. The firm notes were passed and nothing more. The delivery was made by different shipments beginning in November, 1874, and ending in January 1875, and on the arrival of the property it was put up in the before-mentioned building and substantially and firmly connected therewith. There was no stipulation between the corporation and "D. G. Canfield & Co." that the property must be set up on the lots

in Lansing or on any other specific site, and the agreement contained nothing to preclude the firm from making any disposition of the property they could have made if not indebted for it.   The transaction as admitted in the record was the ordinary one of unconditional sale and without any qualifying incidents.   November 5th, 1875, the entire purchase money of the machinery so purchased of defendant became due; and on the 11th of the same month, the money having become due likewise thereon the September previous, the complainant filed his bill to foreclose the mortgage.   December 9th, 1875, the defendant filed a claim of lien and served a copy of the claim on the firm of D. G. Canfield & Son.   February 14, 1876, petition to enforce the lien was filed; Canfield & Co. answered March 6, thereafter, and on the 26th of the next December the court entered a decree adjudging a lien on the machinery and directing a sale.   There is no evidence of any kind of notice to complainant.   Meanwhile and on June 15, 1876, the court decreed foreclosure of the mortgage and ordered sale after November 20, 1876.   February 6, 1877, the sheriff sold the machinery under the lien law proceedings to defendant for $2,000. After the decree was entered in these proceedings and about January 13, 1877, D. G. Canfield agreed in the firm name with defendant upon an arrangement.   February 12, 1877, this arrangement was reduced to writing as though executed by the firm.   It provided that in consideration of the surrender of the firm notes and the acquittance of all claim on account of the purchase of the machinery, the firm assumed to release and assign to the defendant corporation whatever right and interest the firm might have in such machinery, and also to license the corporation to enter on the mortgaged premises and take down, sever and remove all said machinery. . The record is blind in regard to the date and order of some of the events, and in respect to the constituents of some of the proceedings, but this is not very important now.   It appears that about the time of this agree-

ment, and as may be inferred, on or about January 13, 1877, and before the agreement was reduced to writing, the defendant by its agents proceeded to make entry with the design of taking out the property and removing it to Pennsylvania; that February 7th, 1877, complainant filed this bill; that after defendant had removed certain articles, complainant and said Dayton G. Canfield took possession, caused the removed property to be replaced, and leased it to E. Bement & Sons. It is also expressly admitted in the record that since the filing of the present bill the premises as described in the mortgage held by complainant have been sold to him under the decree of foreclosure before mentioned for $3,000, leaving a balance of about $1,600 unpaid and that the mortgagor, said Dayton G. Canfield, is insolvent.

The counsel for defendant do not contend very strenuously that any title can be asserted under the proceedings to institute and enforce a lien, and this court is of opinion that no such right can be maintained. The court in entertaining and carrying on the proceedings instituted by the corporation against the Canfields was not in the exercise of its general or ordinary jurisdiction or exerting its constitutional powers in any analogous way. It was pursuing a new path and applying methods unknown to the common law and unknown to the course of equity tribunals. The jurisdiction which was assumed is not only statutory, but very eccentric, and the proceeding is not entitled to be aided by the presumption which the law indulges in favor of ordinary suits in equity in courts of general jurisdiction. *Platt v. Stewart*, 10 Mich., 260; *Galpin v. Page*, 18 Wall., 350; *Windsor v. McVeigh*, 93 U. S., 274. The proceeding may be impeached collaterally and the facts admitted do impeach it. *Stout v. Sawyer*, 37 Mich., 313. The subject matter did not constitute a case within the statute. The conditions for a lien did not exist and there was nothing to which the special jurisdiction could attach. Moreover it would seem that no notice, actual or constructive, was

given to complainant, and it is not admitted that he would have been bound if the proceedings had been right in other respects. *Windsor v. McVeigh,* supra; *Buck v. Sherman,* 2 Doug. (Mich.), 176; *Greiner v. Klein,* 28 Mich., 12–17; *Mitchell v. Smith,* 53 N. Y., 413; Cooley's Const. Lim., 403; Comp. L., § 6794. Whether in case a lien had been constituted it could have prevailed against this prior mortgage, and if so, in what way and through what remedial expedients, need not be considered. It could not be efficacious and subsist without timely and proper proceedings for its judicial assertion and enforcement.

Some further difficulties suggest themselves in this part of the case, but they require no notice.

The other principal question is whether complainant as mortgagee, or (which as to the present matter is the same thing) as owner and holder of the mortgage, is entitled to insist as against any right the defendant can assert under the assignment to it made in the name of the firm after default on the mortgage and after the decree of foreclosure, that the articles in question were reduced to realty under and subject to the mortgage and caused to be inseparable and irremovable against his objection. The question must be thus restricted because the title of the defendant can have no other basis than the assignment mentioned.

The ground of lien as we have seen is untenable, and the corporation in selling originally to the Canfields agreed for no terms or conditions which on any theory could be urged as implying that the property should remain or be treated as personalty as to any one. As before stated, the transaction was the common one of absolute sale and without condition or reserve.

The property thus obtained of the defendant, it is admitted in the record, "was placed in the building erected on the mortgaged land for that purpose by D. G. Canfield & Co., the boiler being erected in a brick arch, the engine being fastened on timbers let into the

ground, which rest upon a foundation of masonry, the mill being directly over the engine, fastened by bolts or screws to the framework of the building, and connected with the engine by belts and chains."

That all the articles were of such a nature as to be capable of being affixed as permanent additions is not denied, and there can be no question but that the mode and degree of annexation were sufficient to put an end to their character as chattels and make them part of the land. *Murray v. Moross*, 27 Mich., 203; *O'Brien v. Kusterer*, id., 289; *McAuliffe v. Mann*, 37 Mich., 539; *Fisher v. Dixon*, 12 Clk. & Fin., 312; *Holland v. Hodgson*, L. R. 7 C. P., 328: 2 Eng., 655; *Snedeker v. Warring*, 2 Ker., 170; *Potter v. Cromwell*, 40 N. Y., 287; *Voorhees v. McGinnis*, 48 id., 278; *Winslow v. Merchants' Ins. Co.*, 4 Met., 306; *Richardson v. Copeland*, 6 Gray, 536; *Bliss v. Whitney*, 9 Allen, 114; *Despatch Line of Packets v. Bellamy Man. Co.*, 12 N. H., 205; *Teaff v. Hewitt*, 1 Ohio St., 511. It is here proper to recall some of the circumstances. It is not the Canfields who are contending that the articles are removable and are insisting upon the right to detach them and take them away against the objection of complainant as mortgagee; neither is it the corporation in its character of original vendor to the Canfields; but it is the corporation in its character of assignee and licensee of its former vendees, the Canfields, under a quit-claim and license induced by the indebtedness for the purchase price,—an assignment and license made in the name of D. G. Canfield & Co. long after the dissolution of the firm, and long after the abandonment by Volney R. Canfield of all interest and all claim.

The fact that the corporation was originally vendor and received no pay cannot alter the state of the present question. As proprietor it could if it chose make sale and pass the title without pay and without any condition or reserve, and the Canfields could buy without paying and receive the title without qualification. And

in fact such was the mode of dealing by both parties. The Canfields then became as absolute owners as though they had paid the purchase price in full; and as such owners it was of course in their power to devote or subject the chattels to complainant's mortgage by annexing them to the land without any reserve express or implied. They did annex them.

Now because it so happens the corporation originally sold them to the Canfields and got no pay and made no conditions, and now holds the quit-claim and license made in their name, the law cannot therefore step in and raise conditions competent to preserve to the property the character of chattels and enable the corporation to detach and remove them.    The contrary view would lead to very extensive and very absurd results.    Land structures would be everywhere subject to be torn to pieces to satisfy the sellers of the materials.

Whatever right the corporation possesses, it is as assignee and licensee under the arrangement D. G. Canfield made with it in the firm name in the winter of 1877, and as to the question under consideration, the corporation can be in no better position than the Canfields held at that time.    What then as to this question was the situation of the Canfields?

The evidence shows that although the land was conveyed to D. G. Canfield and he made the securities back, still that an understanding existed between him and his son that the latter should have an equal interest in the land, the building and machinery, and that he actually paid some seven hundred or eight hundred dollars towards the purchase price of the land.

Under these circumstances a mill building was erected, and the machinery procured.    The whole was connected together to form a mill.    There seems to have been no arrangement suggested or thought of for regarding any of the things placed on the land as distinct from the land or separable from it in any contingency whatever. The Canfields contemplated that the land and all that was put upon it should be held and enjoyed equally, and did

not contemplate the machinery as subject to a distinct ownership. No distinction was made between land and building, or between either of them and the machinery, and no one seems to imagine that the building can be regarded as a chattel. In fine, the whole proof, actual and presumptive, conduces to show that both the Canfields designed that the building and machinery should be combined with the land to form one property, and in their ownership.

All the criteria of annexation sufficient to forbid interference against the objection of a mortgagee appear to be furnished by the case, and nothing seems to be adduced in derogation.

The counsel for the corporation has cited *Crippen v. Morrison*, 13 Mich., 23, as in some way favoring the defense; but the application is not perceived. There the claimant never suffered the chattels from the beginning to lose their original character. That was constantly kept intact by positive agreement, and the other party had good notice of it.

*Cope v. Romeyne*, 4 McLean, 384, was also referred to as a strong authority on the same side. The report has some gross misprint, but it is easily understood. Mortgagors being in possession took out an engine and sold it. The buyer purchased in good faith and without notice, and the mortgagees sueing him in trover the court decided that the action could not be maintained, and in so ruling it was expressly stated that if it were admitted that the engine was a fixture and not severable, it could not affect the right of the purchaser. The case cannot aid the defense.

It was further claimed that Dayton G. Canfield held the title to the land and building whilst the machinery was purchased by D. G. Canfield & Co., and that this distinction between the ownership of the land and of the chattel property brought the case within *Adams v. Lee*, 31 Mich., 440, and determined that the chattels could not be held as part of the realty.

This position rejects the facts showing the equitable

interest of Volney R. Canfield when the chattels were connected with the land, and admits only the state of the title as at law.

It must not, however, be forgotten that Volney's equal interest in the land and building (though equitable only), and his expectation in regard to future ownership and use as owner, must have weighed with him in the matter of having the chattels connected with the land and building as one property; and it is not only competent but needful to recognize the existence of this equitable interest with the other facts in order to judge properly respecting his concurrence in the annexation and his intent therein.

But the legal title and the relation of the parties as the same are here stated do not show any thing repugnant to the coalition of the chattels and land as one real property, whether we refer to *Adams v. Lee* or any other well considered case.

If we regard the elder Canfield as exclusive owner of the land there is no authority for saying his son could not unite with him in adding fixtures which would pass under his father's deed and be bound by his father's prior mortgage. And the facts are certainly opposed to the notion that he did not mean that the machinery should be so annexed.

It may be further noticed that long before D. G. Canfield made the release to defendant, Volney R. had entirely abandoned all interest and all claim, and at that time there was in fact but one interest. This case is wholly unlike *Adams v. Lee.* There the contending parties respectively owned undivided interests of given extent in the land and at the same time undivided interests of different extent in the personalty. A deed by one of his share of the land would not apply to and carry his actual interest in the articles connected with it. The line of right constituting the boundary between the interests in the naked land would not form the boundary between the interests in the things attached. The nature and quality of the holdings necessarily impressed upon the machinery as

between the co-holders the character of personalty, notwith-standing its connection with the land.  According to some authorities of very high character, had it been mutually agreed expressly between the Canfields that the machinery should continue to be chattels and nothing inconsistent with that understanding had occurred thereafter, still its attachment to the realty in the manner observed here would have made it subject to the mortgage and irre-movable against the objection of complainant.  *Hunt v. Bay State Iron Company,* 97 Mass., 279; *Thompson v. Vinton,* 121 Mass., 139.  This, however, is a very extreme view and is hardly compatible with the tenor of our own previous decisions.  It seems to overlook or ignore one test, and frequently the most important test, namely, the intent of the party making the annexation.  *Teaff v. Hewitt; Potter v. Cromwell* and *Voorhees v. McGinnis,* supra.

Judged by the most lenient rule for preserving to annexed chattels their original character of personalty as against the mortgagee, and yet the machinery in con-troversy here cannot be treated as personalty against the objection of complainant; and the ground of proceed-ing appears to be plain.  Comp. L., § 6369; *Brady v. Waldron,* 2 Johns. Ch., 148; *Robinson v. Preswick,* 3 Edw. Ch., 246; *Spear v. Cutter,* 5 Barb., 486; *Johnson v. White,* 11 Barb., 194; *Salmon v. Clagett,* 3 Bland, 126-180; *Phœnix v. Clark,* 2 Halst. Ch., 447; *King v. Smith,* 2 Hare, 239; *Capner v. President and Directors of Flem-ington Mining Co.,* 2 Green's Ch., 467; *Cooper v. Davis,* 15 Conn., 556; *McRea v. C. N. Bank,* 66 N. Y., 490.

In *Van Pelt v. McGraw,* 4 Coms., 110, a decree to sell had been obtained, and whilst the notice of sale was in course of publication, McGraw, who had purchased the equity of redemption, proceeded to remove rails and tim-ber.  The sale under the decree produced a good deal less than the amount the mortgage called for, and the court of appeals sustained a common law action in favor of Van Pelt, the owner of the mortgage, against McGraw for the waste.

Considering all the circumstances, the result ascertained is reached with some degree of reluctance. But the facts would seem to admit of no other conclusion without overturning settled principles and causing uncertainty and confusion.

The decree below should be affirmed with costs.

The other Justices concurred.