## BENJAMIN FERRIS v. ICHABOD L. QUIMBY.

*Fixtures—Intent to convert chattels into fixtures.*

Machinery owned by tenants in a mortgaged building was sold with the building by bill of sale apart from the deed of the realty. The assignee of a purchaser removed it after foreclosure but before possession was taken, and the foreclosure purchaser sued him in trover. *Held* proper to show that it had always been treated as personalty by the owners, who had a right to keep it apart from the realty and free from the mortgage, which was not taken in reliance on it.

Intent chiefly determines whether a chattel annexed to the realty for use becomes part of it where it is not shown that it was specially adapted for use there or that the freehold is injured by its annexation and removal.

It is a mere irregularity for a referee to class a conclusion as to intent as one of law, and will not sustain error.

Error to Kent. Submitted June 6. Decided June 17.

TROVER for conversion. Plaintiff brings error.

*Taggart & Wolcott* for plaintiff in error.

*Eggleston & Kleinhans* for defendant in error.

COOLEY, J. Trover for fixtures. The following is a sufficient statement of the facts:

In January, 1872, Spencer V. Noble purchased certain lots in Grand Rapids, and gave a mortgage thereon to James Miller for borrowed money. There was at the time a building on the lots which was full of machinery, mainly owned by tenants, and operated by means of a steam engine with power taken from the main shaft extending through the building. In one of the rooms near the main shaft was a cast-iron blower screwed to the floor, run by a belt from the main shaft, and connected with the fire-box at the engine by a wooden box or tube about seventy-five feet long. The office of this blower was to save labor in cleaning up the floor, disposing of the shavings, etc., and it was supposed to diminish in some degree the danger from fire. When Noble purchased, his grantor pointed out to him the engine, boiler, main shaft and blower as a part of the realty. The mortgage to Miller described the lots by numbers, and purported to cover "all the buildings thereon, and the steam engine, boiler, and main shafting in said building."

June 12, 1872, Noble conveyed and delivered possession of the premises to Eliza Spaulding, and while she owned them the building was occupied by different tenants, carrying on their respective operations by machinery. Among the tenants was the firm of Spaulding & Carpenter, composed of Erastus Spaulding and Erasmus D. Carpenter, which firm put in some machinery, belting, etc., and manufactured some kinds of furniture. January 20, 1873, Eliza Spaulding conveyed to Erastus Spaulding, Daniel W. Kleinhans, Erasmus D. Carpenter, and Daniel McNaughton, who thereupon formed a copartnership under the firm name of Spaulding, Kleinhans & Co., for the purpose of carrying on the business of manufacturing and selling furniture on the premises. Spaulding & Carpenter at the same time transferred to this copartnership all their stock, machinery and fixtures,

and the new firm put in more machinery, better counter-shafting, etc., and used the whole building for their business until January 20, 1874, when the Michigan Furniture Company, a manufacturing corporation, was organized and bought out the real and personal property and business of Spaulding, Kleinhans & Co., and continued the business at the same place for two or three months. In May, 1874, Spaulding, Kleinhans & Co. were adjudged bankrupts, and Jacob Kleinhans was appointed their assignee in bankruptcy. Litigation sprang up between the assignee and the Michigan Furniture Company, which was compromised by the company coveying to him whatever it had received from Spaulding, Kleinhans & Co. In the transfers to and from the company the machinery was invoiced and conveyed separately by bill of sale with the furniture and stock, the real estate by deed, and separate accounts were kept by Spaulding, Kleinhans & Co., and the Michigan Furniture Company on their books respectively of the machinery and real estate. Possession accompanied the several transfers.

In June, 1875, Jacob Kleinhans resigned as assignee, and Quimby, the defendant, was appointed to succeed him. He proceeded to remove and sell the machinery as personalty. A list of what was removed embraces a planer, a counter-shaft, a sticker, three shapers, a scroll saw, four breast lathes, a spindle lathe, a tenoning machine, a mortising machine, a dovetailing machine, a boring machine, a doweling machine, certain flanges for line shaft, a quantity of belting, and the blower already referred to. Before removal the different articles or parts of the machinery were put up in the building and held in place by screws, which was the ordinary method of fastening such machinery, whether employed by tenants or owners. The machinery was all suitable, and much of it specially adapted to the business of manufacturing furniture, which, together with storage of stock and selling manufactured articles, was the business to which the whole premises were devoted by Spaulding, Kleinhans & Co. and the Michigan Furniture Company.

The Miller mortgage was foreclosed, and plaintiff became possessed of the title under the foreclosure previous to the removal of the machinery by defendant, but did not obtain possession of the lands until afterwards. In his declaration he counts upon a conversion by defendant of all the articles above enumerated.

The case was heard by a referee, who, against the objection of the plaintiff, suffered the defendant to put in evidence that when Spaulding, Kleinhans & Co. conveyed to the Michigan Furniture Company, the machinery was appraised, sold and conveyed separate from the real estate; that the account of it was kept separate on their books, and invoiced separately. Besides the question raised by this objection, the sole question presented by the record is, whether under the facts found the articles removed by defendant were subject to the lien of the real estate mortgage. The conclusion of the referee was as follows:

"As to all this machinery except the blower, I find no intent on the part of its successive owners to unite it with the freehold permanently as a part of that freehold unless such intent may be inferred from the foregoing facts found. I do not draw that inference from those facts. On the contrary I find that the situation of the parties and their manner of dealing with the property, tend to negative such an inference, although such tendency is slight.

"The case was well argued, and a great number of cases were cited. Without attempting any review of the cases or giving reasons, I express my conclusion by stating that personal chattels are not annexed to the realty by courts, but by their owners, if at all; that the intent to so annex them that they become part of the realty, must appear in some form from the evidence in a case, before the court can adjudge that they are or were so annexed; that such intent does not appear in this case either directly or by inference.

"As to the blower the case is different and entirely clear: the successive owners of it parted with their property in it as part of the premises."

I. We find no error in the reception of evidence to show that the machinery had always been treated,

invoiced and conveyed by the respective owners as personalty. The evidence legitimately tended to show that they had never intended to make it a part of the realty, and under the facts of the case no one could be wronged by their keeping it separate. The mortgage was in existence before; it was not taken under any deceptive appearances caused by the machinery being then in the building and apparently a part of the realty, and the owners when they put it in were under no obligations to subject the machinery to the lien of the mortgage. They had a right to keep it separate, and they violated no principle of law, or of morals, or of public policy in doing so. As the amount of the mortgage proved to be all the land was worth, it is not unlikely that the owners of the equity of redemption would have declined to place valuable machinery in the building had they known or supposed the mortgage would cover it. But however that may have been, it is manifest that they did not wrong the mortgagee by declining to increase the value of the realty for his benefit. And the manner in which they dealt with the machinery from the time it was procured until it was removed, is the best interpreter of their intentions.

II. The referee found that it had never been the intention of the owners to make the machinery a part of the realty. Without undertaking to say that his conclusion respecting the ownership should have been different in the absence of any express finding upon the intention, we think the finding he has made is conclusive. The intent in those cases is the most important circumstance in determining whether the chattel annexed for use to the realty becomes a part of it. *McConnell v. Blood,* 123 Mass., 47; *Savings Bank v. Kercheval,* 65 Mo., 682. There was nothing in the case to show that the articles removed were specially adapted for use in the particular building more than elsewhere, and nothing to indicate that the freehold was injured by their temporary annexation and removal. The case seems to us to be covered by our

own recent decisions.   *Jones v. Detroit Chair Co.,* 38 Mich., 92; *Coleman v. Stearns Manufacturing Co.,* 38 Mich., 30; *Wheeler v. Bedell,* 40 Mich., 693.

III. The conclusion of the referee on the subject of intent was reported by him as one of law.   This, however, is a mere irregularity, and the circuit court properly overlooked it.

The conclusion respecting the blower is not complained of.   We find no error in the judgment of the circuit court in affirmance of the referee's conclusions in other particulars, and it will be affirmed with costs.

MARSTON and GRAVES, JJ., concurred.   CAMPBELL, C. J., did not sit in this case.