# The Mildred.

*(Circuit Court, E. D. Michigan. July 28, 1890.)*

**Maritime Liens—Material-Men.**

The lien of a material-man does not attach to a wrecking outfit leased by the owner of a tug, not as a part of its general equipment, but for a special purpose, although a part of such outfit is attached to the hull and deck by timbers and bolts, and libelants supposed it belonged to the tug, and had never heard that a third person claimed an interest in it.

*(Syllabus by the Court.)*

In Admiralty. On petition of James M. McCormick for surrender of steam-pump and other wrecking outfit.

Petitioner set forth that he was the sole owner of a wrecking outfit, consisting of one Buffalo duplex fire-pump, 1,000 feet of hose, one steam syphon and hose connection; that in June, 1887, he leased the same to the owner of the Mildred, one Laura W. Shaw, for the sum of $98 per year, to be used upon the tug Fish, and afterwards upon the tug Mildred, of which Shaw was the owner; that said owner has no interest in such outfit except as lessee; that the marshal seized said outfit while the same was upon the tug as aforesaid, upon an attachment against the tug; that the same is no part of the general outfit of the tug, but is the individual property of the petitioner. These facts are not disputed, but certain affidavits produced by libelants tend to show that, during the season of 1889, the tug was engaged in towing upon Saginaw river, and in the business of a fire-tug under contract with mill-owners and others at Saginaw; that the fire-pump in question was firmly and permanently attached to the hull by heavy timbers and bolts, and was also attached by pipes to the boiler and to the sea-cock, and that one of the cylinders was firmly attached to the deck; that libelants supposed that the pump and connections belonged to the person who owned the tug, and never heard that any one else had or claimed an interest in the same, until after the libel was filed; that the tug is old, and of no great value, and that, in extending credit to her for the fuel for which this suit is brought, libelants relied upon the tug as a fire-tug with the said pump and connections attached thereto.

*J. W. Finney*, for the motion.

*Simonson, Gillett & Courtright*, for libelants.

BROWN, J. There is no question that under a bill of sale or attachment against a vessel, "her boats, tackle, apparel, and furniture," everything passes which is on board the ship, and used for the business in which she is engaged, if it belongs to the owners. 1 Pars. Shipp. & Adm. 78. The question in this case is whether the word "apparel" or "appurtenances" applies to property which has been hired for the use of the vessel. There is a singular want of authority upon this question, the one in point being that of *The Edwin Post*, 11 Fed. Rep. 603, in which it was held that a wrecking apparatus passed under an attachment, although not belonging to the owner of the vessel, if it was on board by the consent of its owners at the time the lien upon the vessel accrued, and thus furnished an inducement for the credit given to the vessel. The authorities cited by the learned judge in support of his opinion are not in point, except so far as they define as to what may properly be considered "appurtenances" under an attachment in an action for damages. In this case there was no satisfactory proof of the separation of the ownership of the ship and wrecking apparatus; the evidence rather tending to show that both the ship and apparatus were owned by a wrecking company which had voluntarily placed the material on board the ship, and furnished an inducement to the sailors to en-

list in the wrecking service. In the case under consideration, the proof is clear that the fire-pump and hose belonged to the petitioner, and had been leased to the owner of the vessel at a certain fixed sum per year. Now, while it is quite true that if an entire vessel be leased to a charterer, debts contracted by him for supplies furnished to such vessel would constitute a lien, I am not prepared to say that this rule would apply to property hired by him, not for the general outfit of the vessel as a vessel, but as an outfit for a special business or object. I am rather inclined to think that the common-law doctrine in relation to fixtures would be applicable to a case of this kind, and that, unless there was an intention on the part of the owner of the outfit that it should become a part of the permanent appurtenances of the vessel, he would be entitled to reclaim it. The tendency of modern authorities is to hold that the question, whether a piece of property has become a fixture or not, is one of intention as between the parties to the original contract; and that the courts will not hold such property to be a fixture unless it was the obvious intent of the owner that it should be so considered. *Crippen* v. *Morrison*, 13 Mich. 23; *Manwaring* v. *Jenison*, 61 Mich. 117, 27 N. W. Rep. 899; *Ferris* v. *Quimby*, 41 Mich. 202, 2 N. W. Rep. 9.

It seems to me that it would be throwing a needless obstacle in the way of maritime commerce to hold that a master could not hire, nor an owner lend, personal property for the use of a vessel except at the risk of its becoming a part of such vessel, and liable for its debts. In the salvage business, particularly, it is the constant practice of the owners of steam-tugs to hire a wrecking outfit for the rescue of vessels in distress, but it has never been supposed that such outfit was subject to the lien of the sailors for their wages, of the material-men for their coal and provisions, or of the owner of the salved vessel for the non-performance of its contract on the part of the tugs, whether such third-parties knew that such outfit did not belong to the tug or not. In such case the question is not determined by their belief, but by the fact.

But, in order that the rights of the parties may be preserved pending an appeal, an order will be entered for a sale of the wrecking outfit separate from the tug, that petitioner be at liberty to bid, and that the property be delivered to the purchaser upon his executing a bond to the clerk to pay the purchase money into court whenever he shall be required to do so.